RENDERED: JUNE 15, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000585-MR

DATE 7/6/17 Kim Redman, DC

ANTHONY STURGEON      APPELLANT

ON APPEAL FROM CAMPBELL CIRCUIT COURT
V.      HONORABLE FRED A. STINE, V, JUDGE
NO. 13-CR-00699

COMMONWEALTH OF KENTUCKY      APPELLEE

**OPINION OF THE COURT BY JUSTICE VENTERS**

**AFFIRMING**

Appellant, Anthony Ray Sturgeon, appeals from a judgment of the Campbell Circuit Court convicting him for the murder of his brother, Randal Sturgeon, and sentencing him to twenty-five years in prison. He contends that the trial court erred by: (1) failing to dismiss two jurors for cause; (2) failing to instruct the jury on the lesser offense of reckless homicide; and (3) admitting into evidence several hearsay statements of the victim made shortly before his death. We affirm the judgment of the Campbell Circuit Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was an ironworker in northern Kentucky who fell upon hard times as construction jobs dwindled during the recent economic recession. Eventually, he moved back into his childhood home where his brother, Randal,

lived. Appellant's son, Jason, also moved into the house. The residence was subject to a foreclosure proceeding so each of the three occupants knew he must soon find another place to live.

On July 1, 2013, Appellant shot and killed Randal who was reclining on the couch in the living room of the residence they shared. Immediately after the shooting, Appellant called 911. He told the 911 operator that he and his brother had argued; that he did not intend to shoot him; and that he fired the gun accidentally.

The next morning Appellant gave police investigators a more complete explanation of the event. He said that he and Randal argued over a number of things, including Randal's failure to clean up the kitchen, his excessive consumption of milk, and Appellant's belief that Randal had pocketed for himself the money he collected from Appellant and Jason to pay bills.

The matter came to a head when Appellant learned that Randal was moving out and taking with him the Wi-Fi router used at the residence for internet service. Jason had just paid the monthly internet service fee and without the router the payment would be wasted. Appellant said that he paced about his room pondering what to do as the pressure mounted within him. After concluding that he was "fucked" and would be the "weak one" if he did not do "something," Appellant decided to confront Randal with a loaded gun. He told police that at one point he feared Randal was "going to get" him

2

and that he wanted to hurt Randal,[1] but that his purpose for wielding the gun was only to scare Randal.

Appellant explained when he approached Randal, he touched the trigger of the gun and "it just went off." Appellant said he had not previously handled the gun and was surprised when it fired so easily. The bullet struck Randal in the chest; he died almost immediately.

Appellant's principal theory of defense was that he was not guilty of murder because he had acted under the impelling force of extreme emotional disturbance triggered by his anger that Randal was taking the Wi-Fi router right after Jason had paid the bill for internet service. The jury rejected this defense and convicted Appellant of murder.

## II. ANALYSIS

### A. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN FAILING TO STRIKE JUROR 500 FOR CAUSE.

#### 1. Application of RCr 9.36(1)

Appellant first contends that the trial court erred by failing to grant his motions to strike for cause two prospective jurors, identified as Juror 500 and Juror 566. In the final analysis, whether to excuse a juror for cause rests upon the sound discretion of the trial court and on appellate review, we will not reverse the trial court's determination "unless the action of the trial court is an abuse of discretion or is clearly erroneous." *Ordway v. Commonwealth*, 391 S.W.3d 762, 780 (Ky. 2013). Implicit in that rule is the assumption that the

---

[1] Appellant did not assert a self-protection defense at trial.

trial court has applied the correct standard for exercising it discretion. We conclude that, the trial court applied the correct standard; however, we concede that we have allowed the standard for judging for-cause challenges of prospective jurors to drift too far from its anchor: RCr 9.36(1).

RCr 9.36(1) plainly and succinctly establishes the standard by which trial courts are to decide whether a juror must be excused for cause. The rule says: "When there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified."

Rule 9.36(1) is the only standard for determining whether a juror should be stricken for cause. A clearer, more concise expression would be difficult to conceive. "Reasonable ground to believe" is a familiar, easily-applied concept that trial judges use regularly in a variety of situations. As with statutes, courts are obligated to interpret our formally-adopted rules in accordance with their plain language. *Hazard Coal Corporation v. Knight*, 325 S.W.3d 290, 296 (Ky. 2010) ("[W]e interpret the civil rules in accordance with their plain language . . . . The mandate of CR 39.01 is unmistakable in its clarity."); *Parrish v. Commonwealth*, 283 S.W.3d 675, 677 (Ky. 2009) ("[W]e must accept the plain meaning of the language of the rule [RCr 11.42].""); *Lanham v. Commonwealth*, 171 S.W.3d 14, 21 (Ky. 2005) ("More importantly, however, we cannot ignore the plain language of the rule [KRE 103(d)].""). Despite the plain and forthright language of RCr 9.36(1), in a variety of cases over the years, we have expounded upon the rule to the detriment of its plain language.

4

Our divergence from RCr 9.36(1)'s plain language started after *Mabe v. Commonwealth*, 884 S.W.2d 668 (Ky. 1994). *Mabe* explained why a prospective juror who had voiced a personal aversion to certain legal principles could not simply be "rehabilitated" with a "magic question" allowing the juror to disavow his previously-expressed opinion on the law, as held in *Montgomery v. Commonwealth*, 819 S.W.2d 713 (Ky. 1992). Our explanation concluded with this statement:

> A per se disqualification is not required merely because a juror does not instantly embrace every legal concept presented during voir dire examination. The test is not whether a juror agrees with the law when it is presented in the most extreme manner. *The test is whether, after having heard all of the evidence, the prospective juror can conform his views to the requirements of the law and render a fair and impartial verdict.*

884 S.W.2d at 671 (emphasis added). *Mabe* made no mention of RCr 9.36(1).

Taken out of context, the last sentence of the above quote might appear to express a new and definitive test ("*the* test") for determining when a juror must be excused for cause, and indeed, numerous opinions rendered after *Mabe* construed it in precisely that manner. *See e.g. Little v. Commonwealth*, 422 S.W.3d 238, 244 (Ky. 2013); *Dunlap v. Commonwealth*, 435 S.W.3d 537, 581 (Ky. 2013); *Ordway v. Commonwealth*, 391 S.W.3d 762, 781 (Ky. 2013); *King v. Commonwealth*, 276 S.W.3d 270, 278 (Ky. 2009); *Fugett v. Commonwealth*, 250 S.W.3d 604, 622-623 (Ky. 2008); *Wheeler v. Commonwealth*, 121 S.W.3d 173, 179 (Ky. 2003); *Caudill v. Commonwealth*,

5

120 S.W.3d 635, 656 (Ky. 2003); and *Thompson v. Commonwealth*, 147 S.W.3d 22, 51 (Ky. 2004).

*Wheeler* further diminished the primacy of RCr 9.36(1) by identifying the *Mabe* phraseology not as *"the* test," but as *"the true* test," for determining when a juror should be stricken for cause. 121 S.W.3d at 179. We repeated the unfortunate expression in *King*, 276 S.W.3d at 278, and *Ordway*, 391 S.W.3d at 781 (referring to the *Mabe* phrasing as "the established test").

To be clear, the *Mabe* iteration was not intended to replace RCr 9.36(1), and properly construed, it does not do so. However, as subsequently applied, the phrasing has been construed to mean that a prospective juror is excused for cause only if the trial court specifically finds that the juror cannot render a fair and impartial verdict or conform his views to the requirements of the law.[2] Rule 9.36(1) requires no such finding; instead, regardless of the juror's *actual* ability to render a fair and impartial verdict, Rule 9.36(1) mandates the removal of a juror if there is merely "a reasonable ground to believe" that he cannot render a fair and impartial verdict. The difference is palpable. Just as "probable cause" or "reasonable grounds" to support an arrest does not require an actual belief in the verity of the charge, "a reasonable ground to believe" a prospective juror cannot be fair and impartial is not tantamount to an actual finding that the juror cannot be fair and impartial. RCr 9.36(1) requires only

---

[2] We regard the dual prongs of the *Mabe* iteration, "conform his views to the requirements of the law and render a fair and impartial verdict," as redundant because "render[ing] a fair and impartial verdict" necessarily requires one to conform views to the requirements of the law regardless of one's contrary views.

6

that there be a "reasonable ground to believe" that he cannot. When the trial court is satisfied that a "reasonable ground" exists, the juror "shall be excused." RCr 9.36(1).

We confronted the issue less directly in *Ordway* by holding:

> [W]hen there is uncertainty about whether a prospective juror should be stricken for cause, the prospective juror should be stricken. The trial court should err on the side of caution by striking the doubtful juror. . . . [W]here questions about the impartiality of a juror cannot be resolved with certainty, or in marginal cases, the questionable juror should be excused.

391 S.W.3d at 780. That is the essence of RCr 9.36(1). The trial court's ultimate belief that a challenged juror "can conform his views to the requirements of the law and render a fair and impartial verdict" does not necessarily dispel a "reasonable ground to believe" otherwise, and thus does not satisfy the requirement of RCr 9.36(1).

As reflected in the standards set forth above, a juror who explicitly admits that he will not or cannot follow the law as contained in the instructions, has by definition identified himself as a "doubtful" juror who must be excused for cause. *Ordway*, 391 S.W.3d at 780. We understand and allow that a prospective juror's response that appears on its face to be disqualifying may be based upon a misunderstanding of the relevant facts or circumstances. Clarifying questions may be used as needed to ascertain the juror's true attitude about subjects of potential bias. But questions that merely induce the juror to change his mind or to retract a disqualifying remark do not automatically dissipate the "reasonable ground" to believe the bias and

7

partiality implicit in his initial remark. In this vein, we stated in *Shane v. Commonwealth*, 243 S.W.3d 336, 338 (Ky. 2007), that "a juror might say he can be fair, but disprove that statement by subsequent comments or demeanor so substantially at odds that it is obvious the judge has abused his discretion in deciding the juror is unbiased."

Taken in context, the expression in *Mabe* was accurate, but its appropriation in other cases to stand as "the true test" for addressing for-cause challenges to prospective jurors is misleading. RCr 9.36(1) is the only standard to be applied; the *Mabe* iteration repeated in *King, Ordway* and other cases does not serve as an accurate substitute for RCr 9.36(1). With this adjustment in mind, we examine Appellant's specific claims.

### 2. Juror 500

During voir dire examination, Appellant's counsel attempted to ascertain the jurors' attitudes toward the legal construct of the temporary state of mind known as "extreme emotional disturbance" (EED).[3] To draw an analogy, counsel asked jurors about their attitudes toward temporary insanity. Juror 500 said he rejected the notion of temporary insanity because he believed a person was either sane or not sane, thus implying the belief that insanity could not be a temporary condition. Juror 500 said that he would have a "hard time" applying the law contrary to his belief.

---

[3] *McClellan v. Commonwealth*, 715 S.W.2d 464, 468-469 (Ky. 1986), defines EED as "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes."

8

When the questioning by Appellant's counsel focused specifically upon EED, Juror 500 indicated that he accepted the legal concept of a temporary state of mind that so enraged, inflamed, or disturbed someone so as to overcome one's judgment, and that he could apply the law relating to EED if so instructed. Although our review of the record is impeded by the inaudibility of some juror responses, it appears that during voir dire questioning, Juror 500 later equivocated on his ability to apply EED. Although the Commonwealth now challenges Appellant's claim that Juror 500 vacillated on his ability to apply the law relating to EED, we have no doubt that he did so. Despite Juror 500's inaudible and barely-audible responses, the prosecutor's request to "rehabilitate" him with an unusual second round of voir dire questioning about EED, and the trial judge's expressed desire to have Juror 500 "clarify" his attitude about EED, amply reveals the equivocation. The trial judge followed the prosecutor with additional questions for the entire venire. As a result, five other jurors clearly expressed an inability to apply the law relating to EED, and Appellant challenged all six for cause. The trial court denied the challenge to Juror 500 without a specific explanation, but granted the challenge of the other five jurors. Appellant used a peremptory strike to remove Juror 500 from the panel selected to try the case.[4]

---

[4] Appellant's counsel complied with the rule we established in *Gabbard v. Commonwealth*, 297 S.W.3d 844, 854 (Ky. 2009), for preserving an alleged error in the failure to grant a challenge for cause: "[I]n order to complain on appeal that he was denied a peremptory challenge by a trial judge's erroneous failure to grant a for-cause strike, the defendant must identify on his strike sheet any additional jurors he would have struck." Appellant's counsel identified on the jury strike form the two jurors he

The issue before the trial court was *not* whether Juror 500 was actually able to render a fair and impartial verdict. The test demanded by RCr 9.36(1) is whether, given his inability to follow the law concerning "temporary insanity," his subsequent vacillation on whether he could apply the legal concept of EED, and all the other information bearing upon his qualifications to serve, there existed a "reasonable ground to believe" that he could not.

To determine whether a reasonable ground existed to doubt the challenged juror's ability to render a fair and impartial verdict, the trial court "must weigh the probability of bias or prejudice based on the entirety of the juror's responses and demeanor. There is no 'magical question' that can rehabilitate a juror as impartiality is not a technical question but a state of mind." *Sluss v. Commonwealth*, 450 S.W.3d 279, 282 (Ky. 2014) (quoting *Shane v. Commonwealth*, 243 S.W.3d 336, 338 (Ky. 2007)). "The decision as to whether to strike a prospective juror for cause lies within the sound discretion of the trial court, and unless the action of the trial court is an abuse of discretion or is clearly erroneous, an appellate court will not reverse the trial court's determination." *Chatman v. Commonwealth*, 241 S.W.3d 799, 801 (Ky. 2007)(citation and internal quotation marks omitted).

Although significant portions of the voir dire record reflecting Juror 500's comments are hampered by inaudibility, and we have no specific findings of the trial court pertaining to Juror 500's responses, and despite his apparent

---

would have peremptorily struck had he not been compelled to use peremptory strikes to remove Jurors 500 and 566.

10

vacillations, upon a review of his audible voir dire responses taken in their entirety, we find nothing in the record to establish a reasonable ground to doubt his qualifications, and we are afforded no reason to doubt that the trial court applied the appropriate standard. Accordingly, we are unable to conclude that the trial court abused its discretion or was clearly erroneous when it declined to excuse Juror 500.

### 3. *Juror 566*

Juror 566 went to high school with the prosecutor trying the case but said that would not affect her ability to render a fair verdict. She also indicated that she had read about the shooting when it happened, but that too she affirmed, would not affect her impartiality. In response to defense counsel's inquiry, Juror 566 acknowledged that she had an aversion to guns, which she said would not give the Commonwealth an advantage though it might give the Commonwealth a vaguely-defined "leg-up," apparently because this is a case involving gun violence. She hastened to add that her personal distaste for guns would not detract from her ability to be fair and impartial in her deliberations. The trial court concluded that Juror 566's discomfort with firearms was not disqualifying. Nothing in her responses suggested that her attitude about guns would translate into a bias or partiality against Appellant simply because he used a gun rather than some other kind of weapon. Upon the review of the entire examination of Juror 566, we find no reasonable ground to believe that she could not render a fair and impartial verdict on the

11

evidence as required by RCr 9.36(1). The trial court did not abuse its discretion by denying Appellant's motion to strike Juror 566 for cause.

## B. THE TRIAL COURT PROPERLY DECLINED TO INSTRUCT THE JURY ON RECKLESS HOMICIDE.

We next consider Appellant's claim that the trial court should have instructed the jury on the charge of reckless homicide as a lesser-included offense. The trial court instructed the jury on intentional and wanton murder, first-degree manslaughter under extreme emotional disturbance, and second-degree manslaughter for wanton conduct, but rejected Appellant's request for a reckless homicide instruction.

"[A] trial court is required to instruct the jury on affirmative defenses and lesser-included offenses if the evidence would permit a juror reasonably to conclude that the defense exists or that the defendant was not guilty of the charged offense but was guilty of the lesser one." *Harris v. Commonwealth*, 313 S.W.3d 40, 50 (Ky. 2010) (citations omitted). We review a trial court's decision for declining to give a requested instruction under the abuse of discretion standard. *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015).

KRS 507.050(1) provides that: "A person is guilty of reckless homicide when, with recklessness he causes the death of another person." By definition, a person acts with recklessness with respect to another person's death when he "*fails to perceive a substantial and unjustifiable risk*" that his conduct could result in the death of another person and such failure constitutes "a gross deviation from the standard of care that a reasonable person would observe in the situation." KRS 501.020(4) (emphasis added).

12

To warrant an instruction on reckless homicide in this case, there must be evidence to support the reasonable inference that Appellant "failed to perceive a substantial and unjustifiable risk" that his conduct at the time of the offense could result in Randal's death. Appellant's admission that he took the gun to confront Randal for the purpose of scaring him indicates that he did, in fact, perceive the risk associated with pointing a loaded firearm at someone. He knew that the fear he hoped to instill in Randal (the fear of being shot) would be produced by the risk associated with the loaded gun.

Appellant also admitted that, with the gun pointed directly at Randal, he placed his finger against the trigger. The conduct described by Appellant does not suggest "recklessness." It would be objectively unreasonable for a juror to believe from the totality of the evidence that Appellant failed to perceive the substantial and unjustifiable risk of death associated with pointing a loaded gun at a person to scare him, and then touching the trigger. Accordingly, we conclude that the trial court correctly determined that the evidence did not support the giving of an instruction on reckless homicide.

## C. KRE 803(3) - ADMISSION OF THE VICTIM'S TEXT MESSAGES.

Appellant contends that the trial court erred by permitting the Commonwealth to introduce several statements made by Randal in the form of text messages sent in the days and weeks immediately preceding the shooting. Appellant had sought to exclude the statements as inadmissible hearsay. The Commonwealth argued that the statements were admissible to show that in the days leading up to his death, Randal was afraid of Appellant. The trial court

13

ruled that some of the messages fit within KRE 803(3), the present state of mind exception to hearsay, and were otherwise admissible under the relevancy provisions contained in KRE 401-403.

KRE 803 provides as follows:

The following are not excluded by the hearsay rules, even though the declarant is available as a witness:

. . .

(3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

The rule first requires that the out-of-court statement must express the declarant's *present* mental, emotional, or physical condition. "The state-of-mind exception is limited to a statement about a then-existing mental state or condition." *Dillon v. Commonwealth*, 475 S.W.3d 1, 22 (Ky. 2015). The "critical element of the [state of mind] exception [is] the contemporaneity of the statement and the state of mind it manifests. . . . [S]tatements reporting states of mind that existed at earlier points in time cannot qualify for admission under this exception." Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 8.50[3] at 645 (4th ed. 2003)). Professor Lawson cautions: "Courts sometimes apply the state of mind exception without careful attention to relevance. Such oversight is more likely to occur when a "then existing" state

14

of mind is offered to show that the same state of mind existed at an earlier or later point in time." *Id.* at 648.

To be admitted as evidence, an out-of-court statement that fits within the state of mind exception must still meet the relevancy provisions of KRE 401-403. "Where a victim's state of mind is not at issue, the testimony is not allowed to be admitted into evidence." *Bray v. Commonwealth*, 68 S.W.3d 375, 381 (Ky. 2002) (citation omitted).

> [T]o be admitted at trial, evidence must be relevant. KRE 402. Relevant evidence is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' KRE 401. However, even relevant evidence 'may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.' KRE 403.

*Moorman v. Commonwealth*, 325 S.W.3d 325, 332-333 (Ky. 2010). Upon review of the nine statements challenged by Appellant, we conclude that several were improperly admitted because they are irrelevant, but their overall effect was harmless.

We find no error in admitting Randal's text message statement: "No problem, ask about a rental. An empty garage would be fine. Living here is pure hell." The statement reflects Randal's then-present state of mind which may be characterized as extreme displeasure in his current residence with Appellant, which is relevant to show the disharmonious relationship between Randal and Appellant from which the jury may infer a motive for the shooting.

15

We also agree that Randal's statement to his daughter asking if he could spend the night at her place because he was afraid to go home without a phone was properly admitted. The out-of-court statement reveals Randal's contemporaneous state of mind, fear, and is relevant to show the lack of amicability between Randal and Appellant.

Several other statements by Randal were not relevant, even if they did reveal a present state of mind. After initially admitting into evidence Randal's text message that read: "I need a place to move into soon. I've been looking hard for a place to go. He was steaming at me again. I bring the best out of people. LOL." The trial court reconsidered and admonished the jury to disregard it. We agree that with no indication of who "he" refers to, the text was irrelevant. Similarly, Randal's text message stating: "I'm really upset about this, I don't want to have to get stuck with the bills again." bears nothing to indicate what "this" refers to, and nothing to link Randal's stated condition to Appellant. It, too, is irrelevant.

Other messages we regard as irrelevant pertain to Randal's search for a new place to live and his joy in finding a place. Because of the pending eviction, the fact that all three occupants of the house would soon move was not an issue. Randal's message to his friend, Blake: "Hey, Blake, would you know of any rental property, and can you give me Lisa's phone number?" is not relevant. The statement shows nothing more than the fact that Randal was moving out. Randal's text message to his son: "Hey, good news, Scott has a room I can stay in. $50 a week and pay the cable every month." is irrelevant.

16

His message to his ex-wife: "Hey dear, good news. Scott has a room I can stay for $50 a week. And pay for cable every month. You don't know how much this does for me. This has lifted the weight of the world off my shoulders." "So happy" reflects Randal's then-present state of happiness, but we see no relevance in its admission.

Randal's joyful text message to his new roommate, Scott: "Hey Scott and Bella, I'm sorry for being overzealous, I'm not used to having someone be this kind to me," is irrelevant. Finally, Randal's text message to his daughter, stating: "Talked to [Appellant], said I could take the couch and love seat and air conditioner. Oh yeah, for $150," is irrelevant.

Despite the irrelevance of these statements, their prejudicial effect was virtually nil. Appellant did not deny shooting Randal; his claim was that he did so under the stress of an extreme emotional disturbance. "A non-constitutional evidentiary error may be deemed harmless . . . if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth*, 283 S.W.3d 678, 688–89 (Ky. 2009). Randal's frustration at the residence he shared with Appellant and his joy in finding a new place could have had no prejudicial impact on the jury's decision.

### III. CONCLUSION

For the foregoing reasons, the judgment of the Campbell Circuit Court is affirmed.

17

All sitting. Minton, C.J.; Cunningham, Hughes, Keller, Venters, and Wright, JJ., concur. VanMeter, J., concurs in result only.


COUNSEL FOR APPELLANT:

Robert Chung-Hua Yang
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Gregory C. Fuchs
Assistant Attorney General