# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: APRIL 26, 2018
NOT TO BE PUBLISHED

Supreme Court of Kentucky FINAL

DATE 5/17/18 Kim Redmon DC

2016-SC-000544-DG

COMMONWEALTH OF KENTUCKY                              APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.          CASE NOS. 2014-CA-002012 AND 2014-CA-002013
LETCHER CIRCUIT COURT NOS. 12-CR-00159 AND 12-CR-000180

ROBERT SHELBY CAUDILL                                  APPELLEE

AND

2017-SC-000288-DG

ROBERT SHELBY CAUDILL                            CROSS-APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.          CASE NOS. 2014-SC-002012 AND 2014-CA-002013
LETCHER CIRCUIT COURT NOS. 12-CR-00159 AND 12-CR-00180

COMMONWEALTH OF KENTUCKY                        CROSS-APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**REVERSING AND REINSTATING**

A jury found Robert Shelby Caudill guilty of two charges of first-degree

sexual abuse. Caudill received a total sentence of seven years' imprisonment.

On appeal, the Court of Appeals reversed and this Court granted discretionary

review. We now reverse the decision of the Court of Appeals and reinstate the judgment of conviction.

## I. BACKGROUND

Caudill was indicted by a Letcher County Grand Jury on September 6, 2012, and charged with one count of first-degree sexual abuse of a minor less than twelve years old and one count of the use of a minor in a sexual performance. The alleged abuse was perpetrated on Caudill's stepdaughter, H.C. H.C. testified that the abuse started when H.C. was in the fourth grade (two years before the indictment) and that Caudill touched her inappropriately, called her sexually derogatory names, and showed her sexually explicit material. H.C. testified that she and Caudill would play video games and Caudill would make her sit next to him or in his lap. When H.C. sat in Caudill's lap, he would put his hands down her shirt and pants, touching her breasts and vaginal area. Caudill also asked H.C. to perform handstands so her shirt would fall and expose her breasts. Caudill paid H.C. one dollar for each handstand and H.C. later returned the money because she felt guilty. Caudill also showed H.C. pictures of nude men and women and forced her to watch a movie with sexually explicit acts.

H.C. informed her mother of the abuse in January 2012. H.C. and her mother briefly left Caudill's home but returned a month later. The abuse continued and H.C. disclosed the abuse in a letter to a friend. H.C.'s friend gave the letter to the school guidance counselor who contacted authorities.

On October 18, 2012, Caudill was indicted a second time on one count of first-degree sexual abuse with forcible compulsion of a victim under fourteen years of age, one count of criminal solicitation to unlawful transaction with a minor under sixteen years of age, and one count of indecent exposure. These charges stemmed from Caudill's alleged abuse of a stepdaughter, B.C., from a prior marriage. Caudill had been married to B.C.'s mother before his marriage to H.C.'s mother. B.C. disclosed the abuse in December 2003 when she was twelve years old. B.C. testified that Caudill took her to an electronics store[1] and showed her a pornographic video of two men and a woman engaged in sex. B.C. testified that Caudill explained to her "that's how they do it," and Caudill told B.C. she could perform oral sex on customers in the store and receive one hundred dollars each time. B.C. further testified that Caudill said he was going to teach her how to perform oral sex.

When at home that night, Caudill offered to give B.C. one hundred dollars if she performed oral sex on him. He exposed himself to her and she left the room. The next day Caudill said he was going to show B.C. what a penis felt like and he proceeded to take B.C.'s hand and rub it on his erect penis. B.C. disclosed the incident to her mother and they immediately left the home and contacted social services and a Kentucky State Police Detective. No charges were filed at that time. However, when B.C.'s mother learned of Caudill's indictment, she contacted police again, which in turn led to Caudill's second indictment.

---

[1] Caudill and B.C.'s mother owned the electronics store.

3

The Commonwealth moved to consolidate both indictments for trial. The trial court granted the motion, finding striking similarities and a pattern of conduct. The jury convicted Caudill of first-degree sexual abuse, child under twelve, for the abuse of H.C., and he received a five-year sentence. He was convicted of first-degree sexual abuse, child under sixteen, for the abuse of B.C. and received a two-year sentence to run consecutively.

Caudill argued two claims of error before the Court of Appeals: (1) the trial court erred in consolidating the indictments and (2) the trial court erred by refusing to strike Juror B., H.C.'s former teacher, for cause. The Court of Appeals reversed the conviction finding that consolidation of the indictments was improper. The Court of Appeals did not discuss the juror issue. We granted the Commonwealth's motion for discretionary review on the issue of consolidating the indictments and we granted Caudill's cross-motion for discretionary review on the juror issue. For the following reasons, we reverse the Court of Appeals and reinstate the judgment of conviction. We address additional facts as necessary below.

## II. ANALYSIS

### A. The trial court did not err in consolidating the indictments.

#### 1. The offenses were of the same or similar character justifying consolidation.

"The court may order two (2) or more indictments . . . to be tried together if the offenses . . . could have been joined in a single indictment . . . ." Kentucky Rule of Criminal Procedure (RCr) 9.12. RCr 6.18 states, in pertinent part, ". . . two or more offenses . . . may be charged in the same indictment . . .

4

if the offenses are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan." Caudill argued, and the Court of Appeals agreed, that the trial court erred when it consolidated the two indictments for trial. The Court of Appeals found three similarities between the two indictments: (1) Caudill showed both of them pornography on a computer; (2) Caudill offered to pay each of them for inappropriate acts for his own sexual pleasure; and (3) Caudill engaged in illicit sexual touching with each of them. The Court of Appeals found the differences – the inappropriate acts that Caudill allegedly offered to pay each of them for were different, and the illicit sexual fondling that Caudill allegedly engaged in with the girls – outweighed the similarities and made joinder of the indictments improper.

This Court has stated:

> The interaction of RCr 9.12 and RCr 6.18 allows the charges brought in separate indictments to be joined for trial only when the offenses are "of the same or similar character" **or** are "based on the same acts or transactions connected together or constituting parts of a common scheme of plan." When the conditions set forth in RCr 6.18 and RCr 9.12 are present, the trial judge has broad discretion to allow the joinder of offenses charged in separate indictments. We review such decisions for abuse of discretion. Nevertheless, to be reversible, an erroneous joinder of offenses must be accompanied by "a showing of prejudice" to the defendant. This showing of prejudice cannot be based on mere speculation, but must be supported by the record.

> * * *

> [A] significant factor in identifying prejudice from joining offenses for a single trial is the extent to which evidence of one offense would be inadmissible in the trial of the other offense.

5

*Garrett v. Commonwealth*, 534 S.W.3d 217, 223 (Ky. 2017) (quoting *Hammond v. Commonwealth*, 366 S.W.3d 425, 428-29 (Ky. 2012) (emphasis added)).

A trial judge has broad discretion regarding joinder and the judge's decision will not be overturned unless there is a clear abuse of discretion. *Violett v. Commonwealth*, 907 S.W.2d 773, 775 (Ky. 1995) (citing *Schambon v. Commonwealth*, 821 S.W.2d 804 (Ky. 1991); *Wilson v. Commonwealth*, 695 S.W.2d 854 (Ky. 1985)). Caudill is required to show actual "undue" prejudice in the trial court's decision to join the indictments for a single trial. *Roark v. Commonwealth*, 90 S.W.3d 24, 28 (Ky. 2002). "The primary test for determining whether joinder constitutes undue prejudice is whether evidence necessary to prove each offense would have been admissible in a separate trial of the other." *Id.* Evidence of other sexual crimes may be admissible if offered to show intent, motive, or common scheme or plan. *Anastasi v. Commonwealth*, 754 S.W.2d 860, 861 (Ky. 1988). This type of evidence can also be admitted to prove *modus operandi*. *Pendleton v. Commonwealth*, 685 S.W.2d 549, 552 (Ky. 1985). In order to not be unduly prejudicial, the key is for the evidence to be sufficiently similar and not too remote in time to one another. *Commonwealth v. English*, 993 S.W.2d 941, 944-45 (Ky. 1999). Caudill has not met his burden that he was unduly prejudiced by the joinder.

> In order to prove the elements of a subsequent offense by evidence of *modus operandi*, the facts surrounding the prior misconduct must be so strikingly similar to the charged offense as to create a reasonable probability that (1) the acts were committed by the same person, and/or (2) the acts were accompanied by the same *mens rea*. If not, then the evidence of prior misconduct proves only a criminal disposition and is inadmissible.

6

*Id.* at 945 (citing *Billings v. Commonwealth,* 843 S.W.2d 890, 891 (Ky. 1992); *Adcock v. Commonwealth,* 702 S.W.2d 440 (Ky. 1986)).

The alleged abuse against H.C. and B.C. was similar enough that evidence of each crime could have been introduced in the trial of the other. Caudill was the stepfather to both victims; he had an authoritative role. Both victims suffered from the alleged abuse when they were approximately the same age. B.C. testified the abuse occurred when she was twelve years old. H.C. testified that the abuse occurred when she was in the fourth through sixth grades. Caudill also isolated both girls to commit the abuse. The abuse against B.C. occurred when Caudill took her to the electronics store, when they returned home that night, and the next day when they were alone at home. The abuse against H.C. occurred when Caudill and H.C. were alone in the home, specifically when they were playing video games. Caudill also showed both girls sexually explicit nude photographs and/or pornography.

We are not persuaded that the differences in the abuse allegations remove them from the purview of RCr 9.12 and RCr 6.18. The Court of Appeals noted two differences: (1) Caudill offered to pay each of the victims for different inappropriate acts – he offered to pay B.C. to perform oral sex on him, and he offered to pay H.C. to perform handstands which exposed her breasts, and (2) Caudill engaged in different sexual fondling with each girl – Caudill touched and fondled B.C.'s breasts and vaginal area but Caudill made H.C. touch his erect penis.

7

We address each of these so-called differences together. The fact that Caudill offered money for separate sexual acts and engaged in different sexual fondling acts is similar in that he engaged in each behavior for his own sexual gratification. This evidence shows a *modus operandi* for the purpose of proving motive, intent, knowledge, and the absence of mistake or accident, *i.e.*, Caudill knew what he was doing (knowledge), he did it on purpose (intent, absence of mistake or accident), and he did it for his own sexual gratification (motive). *See English*, 993 S.W.2d at 945.

This Court believes that the evidence of both allegations of abuse was sufficiently similar to be admissible evidence of *modus operandi*, and as such, the evidence of each offense would have been admissible in a trial of the other.

## 2. Lack of temporal proximity did not preclude consolidation of the indictments.

Caudill's strongest argument is that the abuse of B.C. was approximately eight years prior to the abuse of H.C. and thus was too remote to be admissible in a trial for the abuse of H.C. and therefore not appropriate for joinder to prove *modus operandi*. It appears that the Court of Appeals not only found insufficient similarities between the two charges, but also placed great weight on the eight-year time difference between the acts. Both Caudill and the Court of Appeals erred in alleging the two cases were too remote to allow joinder.

This Court has indicated that remoteness is not the sole determining factor and temporal proximity is even less significant when the issue is *modus operandi* than when trying to prove both crimes arose out of a common scheme

8

or plan. *English*, 993 S.W.2d at 944-45. As we have already found the charges in the indictment were similar enough to be evidence of *modus operandi*, we also find that the time differential is not a bar to joinder.

Our precedent has determined similar time differentials to be acceptable regarding joinder. In *Berry v. Commonwealth*, the Court of Appeals affirmed the trial court's consolidation of a 1998 indictment with a 2000 indictment. 84 S.W.3d 82, 88 (Ky. App. 2001). The 1998 indictment charged offenses committed between 1977 and 1980. *Id.* The 2000 indictment charged the same offense committed in 1982 and in 1986. *Id. Violett v. Commonwealth*, 907 S.W.2d 773, 775-76 (Ky. 1995), held that acts of abuse against daughter and stepdaughter that were separated by approximately four years were appropriately consolidated in one trial. A five-and-a-half-year gap between defendant's abuse of his stepdaughter and biological daughter was not too remote to preclude joinder. *Riggs v. Commonwealth*, 2002-SC-0880-MR, 2003 WL 22975092, *1, *4 (Ky. Dec. 18, 2003). It was appropriate to consolidate indictments charging the defendant with rape and sexual abuse, even though the rape occurred sixteen years prior to the sexual abuse, because the evidence in each charge was similar enough to prove *modus operandi*. *Morris v. Commonwealth*, 2001-SC-0282-MR, 2003 WL 1193079, *2, *3 (Ky. Jan. 23, 2003). In *Anastasi v. Commonwealth*, defendant was charged with sexually abusing four boys between 1982 and 1984. 754 S.W.2d 860, 861 (Ky. 1988). At trial, the prosecution presented the testimony of a 22-year old man who said he was anally raped by defendant eight years earlier. *Id.* The Court held that

9

the testimony was proper due to the similarities in the alleged crimes, regardless of the eight-year time differential. *Id.* at 861-62.

Rule 404 does not mention temporal proximity as a condition of admissibility. *English*, 993 S.W.2d at 944 (internal citations omitted). "Temporal remoteness generally is held to go to the weight of the evidence, but not to render it inadmissible *per se*." *Id.* (emphasis in original). "Thus, if the prior wrongful act, or a particular aspect thereof, is so similar to the charged offense as to show a *modus operandi* which tends to prove an element of the charged offense, remoteness alone does not require suppression of the evidence of the prior misconduct." *Id.* (internal citations omitted). We also reiterate the trial court's point that the time differential is understandable because the alleged abuse occurred while Caudill was married to each of the victims' mothers. There was no abuse of discretion in the trial court's decision to consolidate the indictments for trial.

## B. The trial court did not err in failing to strike Juror B.[2] for cause.

Caudill's second argument is that he was denied a fair trial due to the trial court's failure to strike Juror B. for cause.[3] Juror B. was a teacher at Letcher County Middle School. Juror B. had been H.C.'s sixth grade teacher and, at the time of trial, H.C. was in the eighth grade. During *voir dire*, when

---

[2] We use the pseudonym "Juror B." to protect the juror's anonymity. The transcript of the *voir dire* below uses this pseudonym instead of the juror's full name.

[3] The record shows that Caudill complied with *Ordway v. Commonwealth*, 391 S.W.3d 762, 781 (Ky. 2013) and *King v. Commonwealth*, 276 S.W.3d 270, 279 (Ky. 2009). Caudill used all of his peremptory strikes and indicated which juror he would have struck had he not had to use a peremptory challenge on Juror B.

10

asked if any jurors knew the victims or the victim's families, Juror B. indicated

he had previously been H.C.'s teacher.

> Defense Counsel: Now, the fact that you've taught her in school, do you feel like that would make it difficult for you to sit on this case?

> Juror B.: I'm not sure.

> Defense Counsel: You're not sure. Do you think it might be hard for you since you've had a relationship with her as a teacher/student and all that.

> Juror B.: Could be, yeah.

> Defense Counsel: You're not for sure?

> Juror B.: I'm hesitant about it.

> Defense Counsel: (at the bench) I would also move to challenge Juror B. for cause. I think he's expressed some doubt about whether he could fairly and impartially try the case. I think he said he would try but he thinks he might have some difficulty.

> Trial Court: No. He said he thought he could do it but he couldn't say absolutely. He said he thought he could do it, he didn't say that he doubted. So at this point that's not been established.

> Defense Counsel: Let me follow up with this.

> Defense Counsel: Let me ask you this question, Juror B. Let's say you sat through the whole case and you come to the conclusion of not guilty. So if you saw [H.C.] again in class would that be difficult for you to face her in that situation if you decided . . . would it be difficult for you to sit in this case knowing that?

> Juror B.: I think that would be the difficulty of it. It would be after the case was over.

> Defense Counsel: Well, does that mean then that you might have any difficulty trying a case without that consideration in mind?

> Juror B.: I would be as fair as I could be. I would be sure . . . there would be uncomfortable situations, though.

> Defense Counsel: (at the bench) He's being kind of equivocal about it, but I

11

would just renew my motion. I still think that because he's expressed sufficient doubt that he should be stricken for cause.

Trial Court: He hasn't at this point. Just one moment.

Trial Court: Juror B., considering all that, bottom line, do you think that you can be fair to both sides in the case?

Juror B.: Yes I do.

Trial Court: Thank you. Motion to Strike is denied.[4]

"The party alleging bias bears the burden of proving that bias and the resulting prejudice. Where there is such a showing, the court must weigh the probability of bias or prejudice based on the entirety of the juror's responses and demeanor." *Hunt v. Commonwealth,* 304 S.W.3d 15, 43 (Ky. 2009) (internal citations and quotations omitted). This Court has recently clarified the standard for determining whether a juror should be stricken for cause and stressed the importance of trial courts' adherence to RCr 9.36(1). We reiterate our return to the proper standard here.

"Where there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." RCr 9.36(1). Prior interpretations have construed the statute in a way so that a juror is excused for cause "only if the trial court specifically finds that the juror cannot render a fair and impartial verdict or conform his views to the requirements of the law." *Sturgeon v. Commonwealth,* 521 S.W.3d 189, 194 (Ky. 2017). "Rule 9.36(1) requires no such finding; instead, regardless of the juror's *actual* ability to render a fair and impartial

---

[4] Trial, August 19, 2014, 4:14 – 4:17:13 p.m.

12

verdict, Rule 9.36(1) mandates the removal of a juror if there is merely 'a reasonable ground to believe' that he cannot render a fair and impartial verdict." *Id.* (emphasis in original). The statute "plainly and succinctly establishes the standard by which trial courts are to decide whether a juror must be excused for cause." *Id.* at 193.

The issue with Juror B. is somewhat similar to the juror issues in *Sturgeon.* In *Sturgeon*, defendant claimed error in the trial court's failure to strike two jurors. One juror, Juror 500, indicated that he rejected the notion of temporary insanity while defense counsel was trying to ascertain the jurors' perceptions of "extreme emotional disturbance" (EED). *Id.* at 195. After further questioning, Juror 500 stated he could apply the concept and law of EED if instructed to do so, but then later equivocated again on his ability to apply EED. *Id.* Five other jurors clearly expressed an inability to apply the law of EED and were excused for cause, while defendant had to use a peremptory strike to remove Juror 500. *Id.* Looking at the totality of the questioning, this Court found no error with the trial court's refusal to strike Juror 500 for cause. Despite Juror 500's equivocation regarding the application of EED, there was nothing in the record to reasonably doubt his qualifications. *Id.* at 196.

Juror 566 went to high school with trial counsel for the Commonwealth. *Id.* This particular juror also had an aversion to guns, but indicated that neither her prior relationship with the prosecutor nor her personal distaste for guns would detract from her ability to be fair and impartial. *Id.* This Court

13

found that Juror 566's discomfort with firearms was not disqualifying as nothing in her responses suggested bias or partiality. *Id.*

In the present case, Juror B. indicated it would be difficult for him to sit on the case because he had been H.C.'s teacher, but that he thought he could fairly and impartially try the case. He further expounded that the difficulty would be the possibility of facing H.C. after the case was over. It is also important to note that Juror B. was not H.C.'s current teacher. He had been her teacher two years prior. There is nothing in the record to suggest that Juror B. had a close or ongoing teacher/student relationship with H.C. Additionally, while Juror B. was equivocal in recognizing that it would be difficult to hear the case, the trial court allowed Juror B. to state that he could unequivocally render a fair and impartial verdict. It should be noted that it is not uncommon for jurors to express concern for the difficulty of hearing cases involving sensitive subject matter, including sexual abuse. Such expression does not automatically equate to bias and partiality. As such, this Court finds no abuse of discretion in the trial court's decision.

## IV. CONCLUSION

For the foregoing reasons, this Court reverses the opinion of the Court of Appeals and reinstates the trial court's conviction and judgment.

Minton, C.J., Hughes, Keller, VanMeter and Venters, JJ., concur. Cunningham, J., dissents by separate opinion. Wright, J., not sitting.

CUNNINGHAM, J., DISSENTING: I respectfully dissent. I believe that Juror B. should have been struck for cause. He was the victim's sixth grade

14

teacher, just two years before the trial. All of his answers to counsel were equivocal at best and expressed reservation about his ability to be fair. I do not believe the one and only rehabilitative question asked by the court was sufficient to qualify the juror. There exists strong "reasonable ground to believe that" Juror B. could not have rendered a fair and impartial verdict. RCr 9.36. I vote reluctantly to reverse on that ground.

COUNSEL FOR APPELLANT/CROSS-APPELLEE

Andy Beshear
Attorney General of Kentucky

Emily Lucas
Assistant Attorney General

COUNSEL FOR APPELLEE/CROSS-APPELLANT

Erin Hoffman Yang
Department of Public Advocacy

15