RENDERED: DECEMBER 9, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0025-MR

TORRIAN ANTHONY BOLES                                            APPELLANT

v.              APPEAL FROM HARDIN CIRCUIT COURT
                HONORABLE KELLY MARK EASTON, JUDGE
                ACTION NO. 20-CR-00183

COMMONWEALTH OF KENTUCKY                                         APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: DIXON, JONES, AND MAZE, JUDGES.

MAZE, JUDGE: Torrian Anthony Boles (Boles) appeals from a judgment of

conviction following a jury trial in the Hardin Circuit Court. He argues that the

trial court improperly denied his motion to strike a juror for cause and by allowing

the Commonwealth to improperly bolster the credibility of its witnesses. We

conclude that the trial court did not abuse its discretion by denying the motion to

remove the juror. We further conclude that any error involving the alleged bolstering was unpreserved and did not result in manifest injustice. Hence, we affirm.

On February 20, 2020, a Hardin County grand jury returned an indictment charging Boles with three counts of complicity to first-degree robbery, and one count of complicity to first-degree burglary.[1] The charges arose from a home-invasion robbery that occurred in Radcliff on January 21, 2020. Except for the extent of Boles' involvement, the parties largely agree on what occurred during this incident.

In pertinent part, the events at issue began with the dating relationship between Brandden Martir and Janea Mulrain. Notwithstanding this relationship, Mulrain testified that she contacted Maurice Walters to plan a robbery of Martir's house. She enlisted the help of Walters and his girlfriend, Taylor Creekmur. On the day of the robbery, Creekmur and Walters picked up Mulrain and Boles and drove to Martir's house. They dropped Mulrain at Martir's house and then pulled down the street. Creekmur testified that Walters handed a gun to Boles.

Meanwhile, Mulrain went inside the house with Martir. Martir introduced Mulrain to his parents and then Mulrain went to use the bathroom,

---

[1] The grand jury also returned indictments on three counts of complicity to first-degree wanton endangerment. However, those counts were later dismissed on the Commonwealth's motion.

-2-

where she remained for about five minutes. She came out to talk to Martir, but then went back to the bathroom, claiming that her stomach was upset. While she was in the bathroom, she texted an emoji to Walters as a signal that it was clear for them to come in.

Shortly after Mulrain came out of the bathroom the second time, the door was kicked in. Two men, both wearing hoods and bandanas, came into the house. The first man, identified as Walters, held a gun to Martir's father, Anthony. The second man, also brandishing a gun, pushed Martir's mother, Gladys, against a cabinet and held a gun to her head. When Martir came into the room, the second man turned the gun on him and ordered him to empty his pockets.

While Martir was turning over his money, Anthony Martir and Walters began struggling over the gun. During the altercation two fingers on Anthony's hand were broken. The two robbers, along with Mulrain, then left the residence. Creekmur picked them up near the house.

The day after the robbery, Martir spoke with Detective Mike Barry of the Radcliff Police Department. While they were talking, another message from Mulrain appeared on Martir's phone. Detective Barry took Martir's phone and used it to set up a meeting with her. Upon meeting, Detective Barry took Mulrain into custody and took her to the Radcliff Police Department. During questioning, Mulrain gave a statement that implicated Boles, Walters, and Creekmur.

Thereafter, Detective Barry searched Mulrain's residence, where he recovered some of the proceeds of the robbery.

A few days after the robbery, Anthony Martir found a wallet in his front yard belonging to Walters. He turned over the wallet to Detective Barry, who then contacted Walters. Walters initially denied any involvement. Subsequently, Walters admitted having entered the residence and being part of the robbery, but he denied having a gun. Creekmur admitted having been in the car with the group, and later picking them up after the robbery.

During his interview, Boles stated that he had dropped a cousin off at the Martir residence and then drove away. He stated that when he returned to pick her up, a person inside the residence refused to let her leave. Boles further stated that he forcibly entered the residence to retrieve his cousin, but he denied having a gun.

Mulrain and Creekmur entered guilty pleas to lesser sentences in exchange for their testimony against Boles and Walters. The matter proceeded to a joint jury trial of Boles and Walters. Mulrain and Creekmur identified Walters and Boles as the armed robbers in the house. Neither Boles nor Walters testified at trial. After deliberation, the jury found Boles guilty of three counts of complicity

to first-degree robbery and one count of complicity to first-degree burglary.[2]

Subsequently, the jury fixed his sentence at a total of twelve years' imprisonment, which the trial court imposed.  Boles now appeals.  Additional facts will be set forth below as necessary.

Boles first argues that the trial court erred by denying his motion to strike Juror 200 for cause during *voir dire*.  As an initial matter, the parties disagree whether this issue is properly preserved for appeal.  Boles states that the matter was preserved as set out in *Floyd v. Neal*, 590 S.W.3d 245 (Ky. 2019).  The Commonwealth acknowledges that Walters' counsel properly objected to Juror 200 but argues that Boles' counsel did not.

As the Commonwealth correctly points out, "[t]he objection of an attorney for one co-defendant will not be deemed to be an objection for the other co-defendant unless counsel has made it clear that in making the objection it is made for both defendants." *McCleery v. Commonwealth*, 410 S.W.3d 597, 602 (Ky. 2013) (quoting *Brown v. Commonwealth*, 780 S.W.2d 627, 629 (Ky. 1989)). In this case, Boles and Walters submitted a joint strike sheet.  Under the circumstances, we conclude that the objection was properly lodged for both defendants.

---

[2] The jury also found Walters guilty on those charges.  His appeal was dismissed by order of this Court dated October 12, 2021.  No. 2021-CA-0055-MR.

During *voir dire*, Boles' counsel asked the panel, "Is there anybody out there that says, 'if it were me, and I was charged with a crime, there is nothing you could say to keep me off the stand. I don't, you would have to drag me away from it?'" Juror 200 answered, "I personally feel that, as a juror, I'd like to hear what the charged person has to say about the crime if I'm in the position of deciding guilty or not, about the facts and information available. That's my personal opinion. I'd like to hear what they have to say."

Juror 200 went on to say that she could find Boles not guilty even if he did not testify. However, she added, "But again, if there was some doubt, it's like, gee, he doesn't have anything to say." During questioning by Walters' counsel, Juror 200 repeated this view. She added that the defendant's decision not to testify could affect her verdict, but it would depend on what other evidence was presented. Juror 200 declined to say that she would have a negative view of a defendant who did not testify, but it would be her preference to hear what he had to say in his defense.

The trial court denied the motion to strike Juror 200 for cause. However, the court instructed the panel of a defendant's right to remain silent and asked if anyone would have difficulty following that instruction. No member of the panel answered "yes" to that question. Boles states that he subsequently

exercised a peremptory challenge to Juror 200, leaving him unable to exercise that strike against another juror.

It is well-established that a defendant is entitled to an impartial jury. "When there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." RCr[3] 9.36(1). "The trial court should err on the side of caution by striking the doubtful juror; that is, if a juror falls within a gray area, he should be stricken." *Ordway v. Commonwealth*, 391 S.W.3d 762, 780 (Ky. 2013). However, the rule mandates the removal of a juror if there is "a *reasonable ground to believe*[,]" that the juror "cannot render a fair and impartial verdict on the evidence[.]" RCr 9.36(1) (emphasis added). *See also Sturgeon v. Commonwealth*, 521 S.W.3d 189, 194 (Ky. 2017). The determination whether to excuse a juror for cause lies within the sound discretion of the trial court and is reviewed only for a clear abuse of discretion. *Soto v. Commonwealth*, 139 S.W.3d 827, 848 (Ky. 2004).

Boles contends that Juror 200 clearly expressed a preference to hear from a defendant despite his right to remain silent. He also asserts that Juror 200's responses demonstrated that she might infer guilt based on either defendant's

---

[3] Kentucky Rules of Criminal Procedure.

-7-

failure to testify. As a result, he argues that the trial court abused its discretion by denying his motion to remove her for cause.

But unlike in *Humble v. Commonwealth*, 887 S.W.2d 567, 570 (Ky. App. 1994), Juror 200 did not unequivocally state that Boles' failure to testify would affect her judgment regarding guilt. *Id.* at 570. Rather, Juror 200 stated that she would prefer to hear from a defendant, but her verdict would depend on all the evidence presented. She specifically stated that a defendant's failure to testify would not make her feel that he was more likely guilty, but it might affect her decision if the Commonwealth's proof was unrebutted. Moreover, the trial court instructed that panel that a defendant is not compelled to testify, and the fact that he does not cannot be used as an inference of guilt and should not prejudice him in any way. *See* RCr 9.54(3). When the court asked the panel if they could follow that instruction, no member objected.

A juror's response to one question, even if it may on its own indicate bias, does not necessarily outweigh the remaining indicia of neutrality. *Whittle v. Commonwealth*, 352 S.W.3d 898, 901 (Ky. 2011). Likewise, a juror's expression of a mere possibility of bias does not equate to a probability that the juror will be biased. *Id.* Here, Juror 200's responses did not suggest a *reasonable* probability that she would infer guilt if Boles failed to testify. Therefore, the trial court did not abuse its discretion by denying the motion to remove her for cause.

Boles next argues that the prosecution improperly bolstered the testimony of Mulrain and Creekmur. Boles concedes that the issue is unpreserved but requests palpable error review. RCr 10.26 allows an appellate court to review an unpreserved error which affects the substantial rights of a party and to grant relief "upon a determination that manifest injustice has resulted from the error." "Manifest injustice" means that the reviewing court must conclude that a substantial possibility exists that the result would have been different in order to grant relief. *Castle v. Commonwealth*, 44 S.W.3d 790, 793-94 (Ky. App. 2000).

During their direct testimony, the Commonwealth asked both Creekmur and Mulrain about the terms of their plea agreements. In particular, the Commonwealth asked each witness about the conditions requiring them to testify truthfully against Boles and Walters. The prosecutor asked Creekmur and Mulrain who would determine whether they had testified truthfully. Both Creekmur and Mulrain responded that the judge would make that determination at their respective sentencings. And during closing argument, the Commonwealth emphasized that their plea agreements required Creekmur and Mulrain to testify truthfully.

Boles argues that the prosecution's questions improperly invaded the province of the jury to decide the credibility of Creekmur and Mulrain. *See Walker v. Commonwealth*, 349 S.W.3d 307, 313 (Ky. 2011). He further contends that the Commonwealth improperly used the plea agreements to bolster their credibility.

Finally, Boles complains that the Commonwealth improperly raised the plea agreements on direct questioning, before their credibility had been called into question. Given our limited standard of review, we find no manifest injustice.

We agree that the Commonwealth's phrasing of the questions during direct examination could suggest that the determination of the credibility was up to the trial judge and not the jury in this case. However, the focus of the questions concerned Creekmur's and Mulrain's obligations under their plea agreements. There is no indication that the Commonwealth intentionally sought to mislead the jury about their responsibility to determine the witnesses' credibility. If an objection had been raised, then the trial court could have admonished the jury. But in the absence of an objection, we cannot find that the result of the trial would have been different.

Similarly, the Commonwealth raised the plea agreements to address their motivations in testifying against Boles and Walters. In his opening statement, Boles' counsel mentioned the plea agreements as a reason why Creekmur and Mulrain were testifying against him. Furthermore, both defense counsel cross-examined Creekmur and Mulrain on the plea agreements. When rehabilitation evidence is admitted before credibility is attacked, any error is harmless as long as credibility is, in fact, later impeached. *Fairrow v. Commonwealth*, 175 S.W.3d 601, 606 (Ky. 2005) (citing *Reed v. Commonwealth*, 738 S.W.2d 818, 821 (Ky.

-10-

1987), and *Summitt v. Commonwealth*, 550 S.W.2d 548, 550 (Ky. 1977)). Since the alleged error in this case is unpreserved, we also find that any error was clearly harmless.

Accordingly, we affirm the judgment of conviction by the Hardin Circuit Court.

DIXON, JUDGE, CONCURS.

JONES, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

JONES, JUDGE: Respectfully, I dissent. In my opinion, the trial court abused its discretion by failing to strike Juror 200 for cause.

"When there is *reasonable ground* to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." RCr 9.36(1) (emphasis added). "This does not mean 'that a prospective juror is removed for cause only if the trial court specifically finds that the juror cannot render a fair and impartial verdict or conform his views to the requirements of the law.'" *Robinson v. Commonwealth*, 647 S.W.3d 136, 141 (Ky. 2022) (quoting *Sturgeon v. Commonwealth*, 521 S.W.3d 189, 194 (Ky. 2017)). Rather, the juror must be removed when there is "reasonable ground to believe[,]" that she will not be fair. Reasonable grounds may exist even if the trial court actually believes that the juror will likely be able to render a fair verdict. "Just as 'probable cause' or 'reasonable grounds' to support an arrest does not

-11-

require an actual belief in the verity of the charge, 'a reasonable ground to believe' a prospective juror cannot be fair and impartial is not tantamount to an actual finding that the juror cannot be fair and impartial." *Id.* (quoting *Sturgeon*, 521 S.W.3d at 194).

A doubtful juror does not have to explicitly state that she will not be able to follow the law. *Id.* "The determination as to whether to exclude a juror for cause 'is based on the totality of the circumstances . . . and not on a response to any one question.'" *Mulazim v. Commonwealth*, 600 S.W.3d 183, 199 (Ky. 2020) (quoting *Hunt v. Commonwealth*, 304 S.W.3d 15, 43 (Ky. 2009)). "[A] juror may say he can be fair, but disprove that statement by subsequent comments or demeanor so substantially at odds that it is obvious the judge has abused his discretion in deciding the juror is unbiased." *Robinson*, 647 S.W.3d at 141 (quoting *Shane v. Commonwealth*, 243 S.W.3d 336, 338 (Ky. 2007)).

Even though Juror 200 stated that she understood it was Boles's right not to testify, she made it clear numerous times during *voir dire* that she would find it difficult, if not impossible, to completely disregard his failure to do so unless the evidence clearly indicated that he was innocent. For example, she told defense counsel: "But, again, if there, *if there was a doubt*, then it's like, gee, he doesn't have anything to say." In essence, Juror 200 indicated that unless Boles was able to convince her that he was innocent beyond a doubt then she would have

-12-

difficulty ignoring his failure to testify on his own behalf. This seriously calls into question the juror's ability to apply the correct burden of proof and to disregard the defendant's failure to testify. *Humble v. Commonwealth*, 887 S.W.2d 567, 570 (Ky. App. 1994).[4]

Even though the trial court may have believed it was possible for Juror 200 to follow the law, I cannot agree that the *voir dire* did not unearth credible doubts and questions as to her ability to do so. "There is no reason for a trial court to imperil the integrity of its proceedings by retaining questionable jurors." *Morrison v. Commonwealth*, 528 S.W.3d 896, 901 (Ky. 2017). As the Kentucky Supreme Court has explained:

> [W]hen there is uncertainty about whether a prospective juror should be stricken for cause, the prospective juror should be stricken. The trial court should err on the side of caution by striking the doubtful juror; that is, if a juror falls within a gray area, he should be stricken. . . . Nevertheless, all too often trial courts, as here, inexplicably put at risk not only the resources of the Court of Justice, but the fundamentally fair trial they are honor-bound to provide, by seating jurors whose ability to try the case fairly and impartially is justifiably doubted.

*Ordway v. Commonwealth*, 391 S.W.3d 762, 780 (Ky. 2013).

---

[4] The Kentucky Supreme Court cited *Humble* with approval in *Hayes v. Commonwealth*, 175 S.W.3d 574, 584 (Ky. 2005) and *Lemaster v. Commonwealth*, No. 2009-SC-000498-MR, 2011 WL 1642176, at *4 (Ky. Apr. 21, 2011).

Here, I do not believe one could not say that there were no reasonable doubts concerning Juror 200's understanding or acceptance that a defendant's failure to testify in his own behalf cannot be held against him regardless of the other proof in the case. If a prospective juror maintains and repeats problematic viewpoints while in the presence of the court and counsel, it is patently unreasonable to believe the juror will miraculously conform to what the law requires in a jury room. Accordingly, I would reverse the Hardin Circuit Court and remand this matter for further proceedings.

BRIEFS FOR APPELLANT:

Jared Travis Bewley
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky