# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

$\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{Kentucky}$

2017-SC-000558-MR

DESHON W. DORSEY                                                                  APPELLANT

V.
ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
NO. 14-CR-003330

COMMONWEALTH OF KENTUCKY                                        APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

Appellant, Deshon Dorsey, appeals from a judgment of the Jefferson Circuit Court convicting him for the murder of Porcia Mills and sentencing him to forty years in prison. He contends that the trial court erred by: 1) permitting the introduction of gruesome autopsy and cumulative crime scene photographs; 2) failing to dismiss a juror for cause; and 3) admitting Facebook posts into evidence, the sole purpose of which was to show his bad character. Finding no reversible error, we affirm the judgment of the Jefferson Circuit Court.

**FACTUAL AND PROCEDURAL BACKGROUND**

Deshon Dorsey and Porcia Mills began a romantic relationship in 2014. Shortly afterward Dorsey began living with Porcia and her toddler, Zaden. By the latter part of 2014, Dorsey started seeing Audreanna, an ex-girlfriend from

high school. When Porcia learned of Dorsey and Audreanna's relationship, she told Dorsey to move out.

Dorsey returned to the apartment early on December 11, 2014, to wash his clothes and organize his belongings so they could be moved later that day. Porcia, who usually left early for work and to take Zaden to day care, was still at the apartment. According to Dorsey, Porcia told him that she was upset about his relationship with Audreanna and then she hit him.

The evidence at trial was that Dorsey cut or stabbed Porcia at least 47 times with a knife. Dorsey testified that he had no memory of these acts or of moving Porcia's body from the couch to where he left her on the floor. He also testified that his memory returned when he cut his left arm multiple times with the intent to kill himself.

Dorsey left the apartment to get medical supplies for his arm by 11:30 a.m. Later in the day Dorsey communicated over Facebook that he had failed everybody and that everyone would find out with time how he had let them down. Porcia was found deceased the next day when the police responded to a "child left alone" call.[1]

Porcia's body was discovered face up and nude; a shirt covered her face. She had suffered sharp force injuries from the top of her head to her lower back.[2] Six individually fatal stab wounds were on her back and sides,

---

[1] Zaden was found locked in a bedroom.

[2] As described by the medical examiner, some of wounds were "incised wounds" which are longer than they are deep, often not lethal. Stab wounds, in comparison,

2

penetrating her lungs, spleen, and neck, injuring her vertebrae and severing the carotid artery, jugular, and thyroid. Most of the back wounds were inflicted while Porcia was either facedown or seated. She also had abrasions on each areola and under her breasts; Dorsey's saliva was found on her right breast.

Porcia did not sustain any defensive wounds but did sustain blunt force injuries on her right knuckles and her left eye. The medical examiner could not opine when she died but indicated the carotid artery and jugular vein injuries would have taken several minutes to less than an hour to cause death from bleeding. According to a crime scene technician's testimony, blood stains were found in nearly every room of the apartment.

Dorsey was arrested on December 13, 2014, and admitted killing Porcia. His trial defense was that he suffered from post-traumatic stress disorder (PTSD) as a result of his military service. He testified that he blacked out at the point of stabbing Porcia, that he could not see anything, but he felt hot, in danger, struggling, like someone was choking him, and he lost control except

---

are deeper than they are long, usually lethal because they are deep enough to cut a large blood vessel or organ.

Porcia suffered wounds on the top of her head, her face, her right eye, and her lower back that penetrated a rib. The left fatal wounds involved entry at her shoulder/neck region, causing injury to her vertebrae and severing the carotid artery, jugular, and thyroid; her shoulder blade and left rib, penetrating the left upper lobe of the lung; and her shoulder blade, penetrating a rib and the left upper lobe of the lung. The right fatal wounds involved entry at the right back region, penetrating a couple of ribs and the upper lobe of the lung; and the right shoulder blade, penetrating the right upper lobe of the lung. The sixth fatal entry was on her lower back, penetrating her left lower lung lobe and spleen.

3

for the ability to react. The defense and prosecution experts disagreed as to whether Dorsey suffered from PTSD.

Having been instructed on intentional murder and first-degree manslaughter under extreme emotional disturbance (EED), the jury found Dorsey guilty of murder.[3] The trial court sentenced Dorsey to serve forty years in prison in accordance with the jury's recommendation, and this appeal followed.

Additional facts pertinent to the claims raised in Dorsey's appeal are set forth below.

## ANALYSIS

Dorsey claims the trial court erred by 1) permitting into evidence gruesome autopsy photographs and cumulative crime scene photographs, 2) not excusing for cause a juror who was not able to consider his EED defense, and 3) permitting the Commonwealth to introduce social media posts which were prohibited under Kentucky Rule of Evidence (KRE) 404(b). We address each claim in turn.

---

[3] The evidence of a possible sexual assault included the abrasions on and under Porcia's breasts; Dorsey's saliva on Porcia's right breast; his bloody footprint on the closet door at the foot of Porcia's body; and the crime scene photographs. The Commonwealth did not introduce other sexual assault evidence and did not further pursue this line of evidence.

## 1) The trial court did not err in admitting the autopsy and crime scene photographs.

Dorsey contends the trial court abused its discretion by permitting the Commonwealth to introduce gruesome autopsy[4] and crime scene photographs into evidence over his objection. He argues that the autopsy photographs and the multiple crime scene photographs of Portia's body and the blood path around the couch are clearly cumulative to the medical examiner's wound chart, the crime scene video, the mapping diagrams and the testimony in this case in which the cause of death and manner of death are uncontested.

At trial, the Commonwealth presented testimony from and visual evidence through a medical examiner, crime scene technicians, and a first responder. The visual evidence included 16 photos from the autopsy and 76 photos from the crime scene comprised of photos with and without evidence markers showing the living room; multiple views of Porcia's body as found and rolled over; the closet door at the foot of Porcia's body which displayed Dorsey's bloody footprint; the kitchen; the bathroom; the second bedroom; men's pants; two knives; and a knife blade and handle.[5] The Commonwealth also introduced a 15-minute crime scene video; a wound diagram depicting the injuries to Porcia's body and face; and 18 crime scene mapping diagrams.

---

[4] As the trial court reviewed the photos, defense counsel stated that his use of the term "gruesome" was derived from caselaw.

[5] The approximately 100 digital photos displayed on the courtroom screen during the introduction of the 76 hard copy photos were not introduced into evidence.

During trial Dorsey maintained his pretrial general objection to all photos,[6] but also moved to exclude specific photos as more prejudicial than probative, cumulative, and having content available from other sources. Fifteen (15) autopsy[7] and twenty-four (24) crime scene photos depicting Porcia and the blood path are at issue. We first consider the autopsy photographs.

**Autopsy photos**

Dorsey specifically objected to the admission of autopsy photos showing Portia's front and back torso, photos of her face, and photos of her scalp. The trial court allowed entry of all the photos except for three, which were excluded as cumulative and/or more prejudicial than probative. Of these three, as the trial court noted, one was a "quite graphic" carotid artery photo, and another was a photo for which related testimony would be more probative.

The nine torso photos admitted into evidence depicted Porcia's back torso and nape wounds, which the medical examiner enumerated 1-16; lower back wound, enumerated 17; left front shoulder wounds; front chest area under her left breast showing an abdomen wound; front chest area under her right breast showing the same abdomen wound; right breast closeup of the areola; left breast closeup of the areola; and right breast and side area (introduced as part of a collective photo exhibit depicting damage to Porcia's shirt). The other

---

[6] Dorsey's pretrial motion to exclude all autopsy and crime scene photos of Porcia's body was continued until trial.

[7] Nineteen autopsy photos were reviewed by the trial court and three were excluded. Although Dorsey objected generally to all the autopsy photos, of the sixteen photos admitted into evidence, Dorsey notes specific objections to all of the autopsy photos except for the photo of Porcia's knuckles.

photos showed wounds on Porcia's head, before and after being shaved; face; right side of her face, with eye and side wounds enumerated 20-29; right eye with lid wounds; and right eye with Porcia's eyeball exposed through lid wounds.

Dorsey cites *Hall v. Commonwealth*, 468 S.W.3d 814, 823 (Ky. 2015), to support his argument that while the trial court excluded a handful of photos, it abused its discretion in allowing the introduction of the multitude of cumulative gruesome photographs. He insists the photographs only served to inflame the jury and cause undue prejudice to Dorsey.

In *Hall*, the defendant, who admitted shooting and killing two victims, claimed that he acted under temporary insanity or under extreme emotional disturbance. *Id.* at 818-19. At trial, Hall objected to the entry of 28 of 43 crime scene and autopsy photographs. *Id.* at 820. This Court concluded that the trial court erroneously admitted all 43 photos as a group without considering the probative value of each of the contested photos individually. *Id.* at 827. Furthermore, in light of alternative evidence, such as less gruesome photos, extensive lay and expert witness testimony, and the crime scene video, the low probity gruesome photos were not needed to prove the substance of the crime. *Id.* at 825. Dorsey appears to view *Hall* as authority for excluding from the jury's consideration autopsy photos which substantively document a heinous act when the Commonwealth has available and successfully admits other forms of evidence such as employed in *Hall*.

7

*Hall* provides explicit direction to the trial court for applying KRE 403 when admitting gruesome photographs. "[I]n all cases in which visual media showing gruesome or repulsive depictions of victims are sought to be introduced over objection, as with all other types of evidence, the trial court must conduct the Rule 403 balancing test to determine the admissibility of the proffered evidence." *Id.* at 823. Furthermore, "[w]hen there is already overwhelming evidence tending to prove a particular fact, any additional evidence introduced to prove the same fact necessarily has lower probative worth, regardless of how much persuasive force it might otherwise have by itself." *Id.* at 824. Consequently, "the judge must consider the photographs within the full evidentiary context of the case, giving due regard to other evidence admitted as well as evidentiary alternatives, so as to ascertain each item's 'marginal' or 'incremental' probative worth for purposes of weighing that value against the risk of prejudice posed by the evidence." *Id.* Although "graphic evidence of a gruesome crime will typically be relevant and have probative value that is not substantially outweighed by the inflammatory effects of the evidence," when multiple gruesome photos are introduced, the probative worth of each additional gruesome photo declines and the inflammatory and prejudicial effect of the images as a whole increases. *Id.* at 825-26.

Dorsey asserts that the facts of his case are comparable to *Hall.* As in *Hall,* the only issue was Dorsey's state of mind, not whether he committed the crime or that Porcia died from multiple stab wounds. Dorsey notes that the

8

jury heard from and saw visual media from the first responder who broke down the apartment door and found Porcia; the crime scene technician who described the location of Porcia's body and other evidentiary items; the crime scene technician who recovered Dorsey's footprint from the closet door; the crime scene technician who attended the autopsy; the medical examiner who documented fatal and non-fatal wounds; and the crime scene technician who described Porcia's body as found, especially her clean, bloodless feet and the blood path. Dorsey maintains that given the nature of this extensive, specific testimony, all the photographs were not needed.

Dorsey argues particularly that because the medical examiner's uncontested testimony proved the stab wounds, the autopsy photographs did not "move the ball"[8] toward proving that fact. He also contrasts the autopsy photos in his case to those in *Holbrook v. Commonwealth*, 525 S.W.3d 73, 85 (Ky. 2017), and the crime scene and autopsy photos in *Ragland v. Commonwealth*, 476 S.W.3d 236, 248 (Ky. 2015), cases in which this Court determined that the trial court did not abuse its discretion by introducing the challenged photos because the probative value of photos substantially outweighed their prejudicial effect. In both cases, the victims' bodies were in a

---

[8] The "advanc[ing] the ball" analogy is used in *Hall*, 468 S.W.3d at 824, discussing the trial court's evidentiary gatekeeping role to prohibit "needless presentation of cumulative evidence" under KRE 403. "When there is already overwhelming evidence tending to prove a particular fact, any additional evidence introduced to prove the same fact necessarily has lower probative worth . . . . The additional evidence does not appreciably 'advance the ball' toward proving that fact." *Id.*

9

state of decomposition when found, and the KRE 403 review noted, respectively, the lack of and insufficient evidentiary alternatives to the photos.

In *Holbrook*, 525 S.W.3d at 85, the victim's corpse was in an advanced state of decomposition and the trial court performed the KRE 403 balancing test for each proffered photograph. This Court noted that because "there was no crime scene video introduced into evidence—the proffered [autopsy] photos were the only way to demonstrate to the jury how [the victim's] body was found, weighed down [in a pond] to prevent its discovery, and how it was recovered by the authorities." *Id.* In *Ragland*, 476 S.W.3d at 248, this Court recognized that the autopsy photos

> were much more probative of the nature of the fatal injuries than other evidentiary alternatives, which included the medical examiner's rudimentary sketches diagramming the locations and relative sizes of [the victim's] various injuries, the medical examiner's bare oral testimony, periodic glimpses of [the victim's] corpse seen on a video of the crime scene, and blood-spatter evidence in the closet showing six distinct impacts.

The Commonwealth counters that Dorsey's case is not like *Hall* in key ways. For example, in contrast to *Hall*, even though the Commonwealth moved to admit several photos in one group as an exhibit, the trial court examined each of the photos individually prior to their admission and weighed the probative value against the danger of undue prejudice. Furthermore, the trial court explained in advance of trial that when judging admissibility of a scene photo or autopsy photo, "each photograph should show something that another photograph does not," and as to autopsy photographs, "there is a level of intrusion into the body where those photographs, unless you are a student

10

of anatomy or medical doctor are going to be pretty meaningless to a jury. And the more graphic they are, . . . [the] more justification . . . is needed to get those in." Consequently, not only did the trial court express the proper weighing of gruesome photos but it plainly followed *Hall*'s directive to weigh each photo individually.

As often noted, "[t]he Commonwealth has a right to prove its case to the jury even when the defendant pleads guilty." *Gall v. Commonwealth*, 607 S.W.2d 97, 107 (Ky. 1980), *overruled on other grounds. by Payne v. Commonwealth*, 623 S.W.2d 867 (Ky. 1981). Although the victim's wounds are certainly unpleasant to view, the various photos are relevant to show the nature of the numerous injuries Dorsey inflicted on Porcia. The Commonwealth correctly points out that a single photo could not encompass all of Porcia's wounds. "The defendant is not entitled to erase the ugly [pictures] and substitute words in their place." *Id.* Or stated another way, "the defendant may not stipulate away the parts of the case that he does not want the jury to see." *Barnett v. Commonwealth*, 979 S.W.2d 98, 103 (Ky. 1998) (citation omitted). "In order for a jury to be able to size up a case fairly . . . it must be allowed to gain a reasonable perspective, and that [is often] best done by permitting it to see an unadulterated picture." *Gall*, 607 S.W.2d at 107.

The challenged photos, relevant and highly probative of the nature of Porcia's injuries, were properly used by the Commonwealth to meet its burden of proving the crime beyond a reasonable doubt as long as KRE 403 is satisfied. *Hall*, 468 S.W.3d at 825. A review of the record establishes the trial

11

court weighed the prejudicial effect of each of the photos against its probative value within the full evidentiary context of the case, *id.* at 823, 824, and excluded some photos based upon their graphic nature, cumulativeness, or the availability of other more probative evidence.

Although Dorsey complains that other evidentiary alternatives were sufficient to prove the manner of Porcia's death, as long as the evidence is not highly inflammatory and prejudicial, the Commonwealth will not be compelled to rely on evidentiary alternatives. *Ratliff v. Commonwealth,* 194 S.W.3d 258, 271 (Ky. 2006). We do not agree with Dorsey that *Hall, Holbrook,* and *Ragland* lead to the conclusion that the trial court abused its discretion when admitting the autopsy photos rather than requiring the Commonwealth to rely on alternative evidence. The trial court performed the KRE 403 balancing test and considered evidentiary alternatives as directed by *Hall.* Furthermore, as to all three cited cases, the photos and other evidentiary alternatives at issue are most like those in *Ragland.* There we stated,

> With the exception of the evidence of decomposition apparent in the images . . . , the photos do not contain any particularly repulsive or otherwise noteworthy imagery to distinguish them from other similarly grisly images of deceased victims routinely admitted to prove the *corpus delicti* or for some other purpose. [The photos are not] so exceptionally gruesome and inflammatory that their exclusion should be required in spite of the general rule favoring inclusion, particularly in light of their substantial probative worth.

476 S.W.3d at 249.

Dorsey states that Porcia's back torso and nape wounds and her face wounds are the most gruesome of the autopsy photos. However, when

12

comparing these photos to the *Hall* photos, we note that a photograph is not gruesome or gory because it is unpleasant to view. For example, in *Hall*, the photos consisted of graphic images showing a gunshot victim's hand exploded by a bullet with the mangled bloody remains consisting of the fingers positioned unnaturally, pointing in multiple directions; the gunshot wound to the same victim's head, a dark red void approximately four inches wide without scalp and hair, with a pool of bright crimson blood extending several feet from the head wound; and the closeup of pieces of blood and soft tissue ranging in size from a couple millimeters to a couple inches in various locations on the porch, in the yard, and on an interior wall of the house. *Id.* at 821. Many of the photographs objected to in *Hall* contained details aside from depicting the victim, details which may have worsened the photograph's impact on the viewer. Here, in contrast, although many of the back and nape wounds are elongated and some are rather jagged and tissue is exposed, the autopsy photos presented these wounds, the face wounds, and other wounds in a clinical manner and did not depict other details rendering the photos gory or gruesome.

Rarely does a trial court abuse its discretion under KRE 403 by admitting gruesome photos when a heinous crime is at issue. *Hall*, 468 S.W.3d at 827. As in *Ragland*, we conclude the challenged photos in this case are typical of routinely admitted crime victim photos and in light of their probative value, we find no basis for excluding them. The challenged photos were much more probative of the nature of Porcia's fatal injuries when compared to other

13

evidentiary alternatives. Furthermore, we do not consider the photos cumulative when the jury was presented with the autopsy photographs on one courtroom screen while the medical examiner noted the corresponding injuries on the wound diagram displayed on another screen. This format allowed the jury to see a fuller perspective of the nature of the violent crime committed. Even within themselves, the photos were not duplicative or otherwise needlessly cumulative. In short, we do not find that the trial court's decision to admit the autopsy photos was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

**Scene photos**

Dorsey also complains about the cumulativeness of the crime scene photos. He specifically objected to 26 scene photos being redundant of Porcia's body at the scene and the blood path around the chaise part of the couch. After reviewing the photos individually, the trial court excluded two photographs as cumulative.[9]

Dorsey identifies ten crime scene video segments which show the images that were objected to in hard copy photographs — Porcia's face-up nude body with her face covered by a t-shirt, seen from multiple points of view and including closeup images of the wounds on her abdomen, under her breasts

---

[9] Upon the trial court's direction to pare down the number of photos, the Commonwealth selected approximately 75 photos out of the approximately 800 crime scene photographs from the small apartment.

and neck, and showing her genitalia and torso and her ripped underwear on her right leg; and the blood path around the chaise end of the couch. Citing *Baumia v. Commonwealth*, 402 S.W.3d 530, 542 (Ky. 2013), the Commonwealth contends the crime scene video was relevant because it offered a more accurate depiction of the crime scene than the technician's testimony alone could provide.

Similar to his arguments regarding the autopsy photographs, Dorsey argues that the crime scene technician's testimony explaining the photos, given uncontested testimony that Porcia was stabbed to death in her apartment, did not advance proving the fact Porcia died in her apartment from the stab wounds. Dorsey specifically supports his argument that the crime scene photographs were cumulative by noting that when describing the photos displayed on a courtroom screen, the crime scene technician made comments such as "nothing new here," "another look," or "next" when viewing multiple images of the blood path, Porcia's body, a saturation stain, a pool of dried blood, Porcia's feet, and her body after placement of evidence markers. The Commonwealth counters that beyond showing the commission and violence of the crime, the photographs were also used to counteract Dorsey's "temporary state of mind" EED defense; the photos were relevant to illustrate the amount of time it took for the attack and all subsequent events which allegedly occurred during Dorsey's "blackout."

Upon viewing some of the photos, particularly numerous photos of the victim's feet, Dorsey's argument appears to have merit. However, the

15

Commonwealth states the multiple perspectives of the feet were relevant to the technician's testimony and, further, the lack of blood on Porcia's feet was significant to its case, indicating Porcia was not walking on the blood-covered floor. Upon reviewing the crime scene technician's testimony describing the photos, we conclude the technician provided appropriate context and reasons for the multiple photos.

Clearly, the needless presentation of relevant cumulative evidence is discouraged — in part to prevent waste of time.[10] While some of the photos introduced may appear cumulative, cumulativeness on its own is harmless error. *See Combs v. Commonwealth,* 965 S.W.2d 161, 165 (Ky. 1998). Cumulative evidence is not harmless, however, when undue prejudice outweighs the incremental probity of the cumulative evidence. *Hall,* 468 S.W.3d at 824 (citations omitted). Determining whether the probative value of the challenged photos is substantially outweighed by undue prejudice is a task within the sound discretion of the trial judge. *Cook v. Commonwealth,* 129 S.W.3d 351, 361 (Ky. 2004); *Barnett,* 979 S.W.2d at 103 ("In making a KRE 403 ruling, a trial court must consider three factors: the probative worth of the evidence, the probability that the evidence will cause undue prejudice, and whether the harmful effects substantially outweigh the probative worth.").

---

[10] KRE 403 is entitled "Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time."

Like the autopsy photos, the trial court reviewed the crime scene photos individually, and during that review, excluded two photos as cumulative. As pointed out by the Commonwealth, the crime scene evidence was necessary to refute Dorsey's "state of mind" EED defense. Upon review, we cannot find the trial court abused its discretion by concluding that entry of the challenged crimes scene photos into evidence did not create undue prejudice which substantially outweighed their probative value.

## 2) The trial court did not err by declining to grant Dorsey's request to remove Juror 23 for cause.

Dorsey's next claim is that the trial court erred in failing to grant his for-cause juror challenge to Juror 23. According to Dorsey, this error led to another juror being on the panel who he otherwise would have removed by a peremptory strike.[11]

During voir dire, relevant to his EED defense, Dorsey's counsel asked potential jurors their opinions as to whether murder can be mitigated by emotion or rage. One juror, identified as Juror 45, explained that she believed that people are accountable for their actions and if a person has rage problems, they should do something about it before it escalates and someone is hurt. She specifically stated:

> I don't think that as a juror . . . the defendant . . . ought to use rage as something for the jurors to look at. I would not want to do that. Not rage and anger. I just would not want to count

---

[11] Appellant's counsel complied with the rule established in *Gabbard v. Commonwealth*, 297 S.W.3d 844, 854 (Ky. 2009), for preserving an alleged error in the failure to grant a challenge for cause. He identified on his strike sheet additional jurors he would have peremptorily struck had he not been compelled to use peremptory strikes to remove Jurors 1 and 23.

that into lessening any degree of the charge. . . .   I don't believe that at all.

Soon afterward, defense counsel asked another juror, identified as Juror 23, her opinion on rage.  The discourse between defense counsel and Juror 23 follows.

> Juror 23    I think (inaudible).
> Counsel:    You-you agree?
> Juror 23:   Yes.  Murder, whether it's intended or not (inaudible).
> Counsel:    OK.
> Juror 23:   It's (inaudible) to shoot somebody.
> Counsel:    You – the emotional state of someone does not matter to you?
> Juror 23:   That's true.
> Counsel:    What's the chance that I'm going to change your mind in the next four days?
> Juror 23:   Slim.
> Counsel:    Slim?  OK.

The trial court granted Dorsey's motion to strike Juror 45 for cause, but not Juror 23.  The trial court explained that Juror 45's response disqualified her as being unable to consider the EED defense and a conviction under a manslaughter instruction, stating:

> [Juror 45] said rage or anger cannot be used to reduce a charge . . . .  And, if in this case, the extreme emotional disturbance instruction is given, her statements relate directly to that.
>
> That's different than number 23 . . . both of them were asked in a vacuum.  [Juror] 45 just happened to hit on the precise issue.  [Juror] 23 did not. . . .  She [gave] an opinion that emotional state doesn't matter on a murder, and it frankly might not based on the instruction that may be given.  There was no further investigation [by counsel] into anything related to the law, and . . . there was no request to go any further into it.

18

In *Sturgeon v. Commonwealth*, 521 S.W.3d 189, 193 (Ky. 2017), we recently explained that RCr 9.36(1)'s[12] plain reading requires a prospective juror to be excused for cause if there is a reasonable ground to believe that he cannot render a fair and impartial verdict. Dorsey argues that the trial court erred when denying his for-cause strike of Juror 23 because, when considering the overall context of her discussion with defense counsel, defense counsel's for-cause challenge, and the trial court's reasoning for denying the strike, Juror 23, like stricken Juror 45, was unable to consider the EED defense in this case. Dorsey specifically notes that when Juror 23 stated she felt a person's emotional state does not matter in a murder, that constituted a reasonable ground for believing that she could not render a fair and impartial verdict.

> To determine whether a reasonable ground existed to doubt the challenged juror's ability to render a fair and impartial verdict, the trial court must weigh the probability of bias or prejudice based on the entirety of the juror's responses and demeanor. . . . The decision as to whether to strike a prospective juror for cause lies within the sound discretion of the trial court, and unless the action of the trial court is an abuse of discretion or is clearly erroneous, an appellate court will not reverse the trial court's determination.

*Sturgeon*, 521 S.W.3d at 196 (internal quotation marks and citations omitted).

Although portions of the voir dire record reflecting Juror 23's comments are inaudible, the trial court made specific findings pertaining to Juror 23's

---

[12] RCr 9.36(1) states: "When there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified."

responses. The trial court evaluated Juror 23's responses in light of the juror's knowledge of the facts and understanding of the law, *Stopher v. Commonwealth*, 57 S.W.3d 787, 797 (Ky. 2001), noting Juror 23's response was made in a vacuum,[13] and unlike "doubtful" Juror 45,[14] did not specifically state she could not consider rage or emotion to reduce a charge. Without more, the trial court determined that Juror 23's responses and demeanor did not provide a reasonable ground to believe that she could not render a fair and impartial verdict. *See also Sturgeon*, 521 S.W.3d 189, 196 (juror's vacillations did not create reasonable ground to doubt his qualifications). Upon review, we cannot conclude the trial court abused its discretion when it declined to excuse Juror 23.

### 3) The trial court did not commit palpable error when allowing the Commonwealth to introduce into evidence the social media posts Dorsey made after Porcia's death.

Lastly, Dorsey claims that the trial court erred when allowing the Commonwealth to introduce into evidence his social media posts that he made after Porcia's death. Because the specific error he now alleges was not preserved, he seeks palpable error review pursuant to Kentucky Rule of Criminal Procedure (RCr) 10.26.

---

[13] Later in voir dire, to help with confusion, the trial court explained that there are some circumstances in which the law will actually allow taking into consideration a defendant's emotional state.

[14] "[A] juror who explicitly admits that he will not or cannot follow the law as contained in the instructions, has by definition identified himself as a "doubtful" juror who must be excused for cause." *Sturgeon*, 521 S.W.3d at 194 (citing *Ordway v. Commonwealth*, 391 S.W.3d 762, 780 (Ky. 2013)).

The Commonwealth introduced into evidence Facebook postings Dorsey made in the hours after killing Porcia. The postings consisted of messages with Dorsey's then-girlfriend, Audreanna; three photos including one depicting Dorsey with another female; and nine photos[15] taken during Dorsey's military deployment. When the messages with Audreanna were introduced during the detective's testimony, Dorsey objected on hearsay and confrontation grounds. The trial court agreed with the Commonwealth that the messages were relevant to Dorsey's state of mind, put at issue by Dorsey's EED defense, and overruled the objections. Dorsey's counsel stated he had no objection to the photos including the other female, also entered during the detective's testimony, and the deployment photos, entered during Dorsey's testimony.

Citing *Rucker v. Commonwealth*, 521 S.W.3d 562, 567-70 (Ky. 2017), Dorsey now argues that introduction of these social media posts into evidence was error under KRE 404(b). KRE 404(b) does not allow admission of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith; however, KRE 404(b)(1) does allow entry of such evidence if it is "offered for some other purpose," including but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *Rucker*, the defendant alleged he accidently killed his girlfriend and, after realizing she was dead, he was scared and disposed of her body. *Id.* at

---

[15] The exhibit consisted of 87 pages of photographs, nine were uploaded by Dorsey on December 11 and 12, 2014.

566. During trial, over Rucker's objection, the trial court allowed the Commonwealth to introduce sexually explicit images of Rucker and conversations which Rucker exchanged through Facebook after his girlfriend's death, agreeing with the Commonwealth that the postings went to Rucker's state of mind and that they were not covered by KRE 404(b). *Id.* at 567.

Upon review, this Court concluded that the Facebook postings were "acts" subject to analysis under KRE 404(b). *Id.* We also concluded that the trial court abused its discretion admitting the postings because the Commonwealth's purpose in showing the jury the Facebook postings was simply to demonstrate that Rucker was a contemptible person of low character; the postings were not relevant to his state of mind regarding crimes that had already been committed against his former girlfriend and did not pertain in any way to the crimes with which he was charged. *Id.* at 569. Dorsey contends that as in *Rucker,* his social media posts were not relevant to his state of mind.

We review the trial court's decision to enter the social media posts, the prior bad acts evidence, for an abuse of discretion by considering if the evidence is relevant for some purpose other than to prove the criminal disposition of the accused, probative as to the actual commission of the prior bad act, and not overly prejudicial under KRE 403. *Kerr v. Commonwealth,* 400 S.W.3d 250, 260–61 (Ky. 2013) (internal quotation marks, alteration, and citations omitted). In this case, we find no abuse of discretion.

Although the majority of Dorsey's postings were introduced during the detective's testimony, Dorsey contends that it is clear from the

22

Commonwealth's cross-examination of Dorsey that its purpose in introducing the postings was to show Dorsey's callousness in talking to another woman and spending time uploading to Facebook after killing Porcia, leaving her in a pool of blood and her toddler son locked in a room, and going about his day as if nothing had happened. The Commonwealth maintains the messages and posts went directly to Dorsey's state of mind at the time.

Kentucky Revised Statute (KRS) 507.020(1)(a) provides that a person is not guilty of murder when he intentionally causes the death of another person if "he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." In *McClellan v. Commonwealth*, 715 S.W.2d 464, 468-69 (Ky. 1986), we defined "extreme emotional disturbance" as follows:

> Extreme emotional disturbance is a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes. It is not a mental disease in itself, and an enraged, inflamed, or disturbed emotional state does not constitute an extreme emotional disturbance unless there is a reasonable explanation or excuse therefor, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under circumstances as defendant believed them to be.

Thus, if the jury has a reasonable doubt as to whether a defendant was acting under the influence of extreme emotional disturbance, the jury cannot find him guilty of murder. Consequently, once the defendant introduces

23

evidence tending to establish EED, in order to obtain a murder conviction, the Commonwealth must prove the homicidal act was not committed under the influence of an extreme emotional disturbance. *Greene v. Commonwealth*, 197 S.W.3d 76, 81 (Ky. 2006). However, the Commonwealth's affirmative duty to prove the non-existence of EED is relieved if such proof is already present. *Id.* With evidence putting the existence of EED in dispute, the existence of EED becomes a question for the jury. *Benjamin v. Commonwealth*, 266 S.W.3d 775, 782 (Ky. 2008) (citation omitted).

> Where direct evidence of the defendant's state of mind is lacking, or is unclear, or is at odds with other evidence that can be deemed substantial, we have held that intent to kill can be inferred from the extent and character of the victim's injuries and from the defendant's actions preceding and following the charged offense, but whether a defendant actually has an intent to kill remains a subjective matter, and other inferences are not ruled out.

*Malone v. Commonwealth*, 364 S.W.3d 121, 131 (Ky. 2012) (internal quotation marks and citation omitted).

The Commonwealth insists that in rebuttal of Dorsey's evidence of EED, it introduced Dorsey's Facebook postings prior to and after his killing of Porcia to show his pattern of behavior, *i.e.*, that Dorsey did not care about Porcia and the murder was not a result of EED. Prior to the murder, Dorsey communicated to Audreanna that he missed her, he loved her, and he couldn't wait to get the promised full body massage. After killing Porcia, he did not attempt to help her or her son. He instead took Porcia's car and went for medical supplies for himself. On the day of the murder, he continued to message Audreanna about the massage. He also made other Facebook

24

postings about another woman and continued about his day as if nothing had happened.

Unlike in *Rucker*, we agree with the Commonwealth and the trial court that the postings in this case are relevant to Dorsey's state of mind, and are thus offered for some purpose other than to prove the criminal disposition of the accused. Furthermore, the postings are probative as to the actual commission of the bad acts, and when reviewing the evidence in the light most favorable to the Commonwealth, *Major v. Commonwealth*, 177 S.W.3d 700, 707 (Ky. 2005) (citation omitted), not overly prejudicial under KRE 403. Here, with direct evidence of Dorsey's state of mind lacking, we find that the trial court properly admitted the Facebook postings, actions from which Dorsey's intent to kill could be inferred. The trial court did not commit palpable error, and consequently, relief is not available to Dorsey under RCr 10.26.

## CONCLUSION

For the reasons stated above, the Jefferson Circuit Court's judgment is affirmed.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter, and Wright, JJ., sitting. All concur. Buckingham, J., not sitting.

25

COUNSEL FOR APPELLANT:

Daniel T. Goyette
Cicely Jaracz Lambert
Adam Braunbeck
Louisville Metro Public Defender


COUNSEL FOR APPELLEE:

Andy Beshear, Attorney General of Kentucky

Mark Barry
Assistant Attorney General